IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

**LATONYA DAWSON**
1636 E. 30th Street
Baltimore, MD 21218

    *Plaintiff*
v.

**HOUSING AUTHORITY OF
BALTIMORE CITY**
417 E Fayette St
Baltimore, MD 21202

*and*

**WADE JOHNSON**
7606 Tamsin Court
Baltimore, MD 21237

Case #
JURY TRIAL DEMANDED

# COMPLAINT

Comes now the Plaintiff, Latonya Dawson, by and through counsel, Cary J. Hansel, Erienne A. Sutherell, Hansel Law, PC, and Annie B. Hirsch of Hirsch and Cosca, PC and sues the above-named defendants, stating as follows:

## INTRODUCTION

1.  This lawsuit is being filed as a result of persistent sexual abuse and harassment perpetrated by a supervisor against Latonya Dawson in the workplace. The Housing Authority of Baltimore City knew or had reason to know that Maintenance Superintendent Wade Johnson had a history of inappropriate sexual behavior in the workplace yet hired and continued to employ him to act in a supervisory capacity. His continued, daily sexual comments advances created a hostile work environment for the Plaintiff and other women under his supervision.

2. The workplace sexual abuse and harassment perpetrated by Wade Johnson took place in the context of the rampant abuse in the Gilmor Homes and other Housing Authority of Baltimore City ("Housing Authority") properties, where maintenance employees also shamelessly preyed on innocent female tenants in widespread sex-for-repairs *quid pro quo* sexual harassment.  As in that case, supervisors attempted to cover up the harassing behavior.

3. The practice of covering up sexual harassment by maintenance workers is so widespread that it is a pattern and practice by the Housing Authority, whose officials have repeatedly turned their backs on city residents and on their own employees.  For years, the Housing Authority of Baltimore City has ignored numerous complaints and repeatedly allowed abusers to maintain their positions of power.

4. Wade Johnson's sexually harassing behavior was nearly a daily occurrence in the workplace which caused Latonya Dawson extreme mental duress, affected her ability to work productively, affected her family life, put her in fear of losing her job, and put her in fear that he would one day increase his sexual aggressiveness and do her harm.

## JURISDICTION

5. Jurisdiction is proper in this Honorable Court under 28 U.S. Code § 1331 because this is a civil action arising under the Constitution, laws, or treaties of the United States.

## VENUE

6. Venue is proper in this Honorable Court under 28 U.S.C. § 1391 because the parties are domiciled in Maryland, or organized under Maryland law, and the events at issue took place in Baltimore, Maryland.

## PARTIES

7. Latonya Dawson is an adult citizen of Baltimore, Maryland.

8. The Housing Authority of Baltimore City is a public body corporate and politic created under the laws of the State of Maryland.

9. The Housing Authority of Baltimore City is *sui juris*.

10. The Housing Authority of Baltimore City is an agency of the City of Baltimore.

## FACTS COMMON TO ALL COUNTS

11. Latonya Dawson ("Ms. Dawson") is a 44 year-old female employee of the Housing Authority of Baltimore City.

12. Ms. Dawson has been employed by the Housing Authority since 1994, and at all times relevant to this action held the position of Maintenance Clerk.

13. In February of 2016, Mr. Wade Johnson ("Mr. Johnson") began sexually harassing Ms. Dawson, which continued up until June 9, 2016.

14. Ms. Dawson was working at the Gilmor Homes location, where Mr. Johnson had been relocated to and was acting as Ms. Dawson's supervisor. Plaintiff believes Mr. Johnson was transferred to Gilmor as a result of his inappropriate behavior at Duncanwood.

15. In February of 2016, Mr. Johnson began making sexually explicit and lewd comments to Ms. Dawson on nearly a daily basis, making statements about her breasts, buttocks, lips, and hair.

16. Between February of 2016 and June of 2016, Mr. Johnson made the following sexually harassing comments to her:

a. That her "titties are sitting up nice and high";

b. He wished he could be the chair for her to sit on;

c. "I wish I had those lips wrapped around me.";

3

    d.      "Those are sexual bedroom eyes";

    e.      That he would "love to ride that trunk";

    f.      That Ms. Dawson had a "lot of junk in her trunk.";

    g.      When stating that she needed a new cushion for her office chair, Mr. Johnson said "It seems to me you have enough cushion already in that chair."

17.     In addition to the specific comments outlined, Mr. Johnson would frequently comment about Ms. Dawson's clothing.

18.     As a result, Ms. Dawson began wearing a baggier uniform to hide her figure more, even though her uniform was already modest and unrevealing.

19.     Ms. Dawson also heard Mr. Johnson making comments about other female employees appearances and remarking about their bodies.

20.     Ms. Dawson dismissed all of Mr. Johnson's comments and refused to reciprocate the sexually inappropriate behavior.

21.     Ms. Dawson refused to give into Mr. Johnson's lewd comments and did not respond to his sexually suggestive comments and conduct.

22.     Mr. Johnson repeatedly tried to force his personal cell phone number on Ms. Dawson, but she refused to accept it.

23.     Because Ms. Dawson refused to respond to Mr. Johnson's sexual harassment, Mr. Johnson retaliated against her and told her that she had to resign from her second job as a crossing guard.

24.     Ms. Dawson was fearful of losing her job with the Department of Housing, so she complied and quit her second job.

25. Also because of Ms. Dawson refusing to flirt back or otherwise respond directly to Mr. Johnson when he would make sexually harassing comments to her, Mr. Johnson threatened that she would lose her recently acquired promotion.

26. Because of these threats, Ms. Dawson was originally reluctant to make a complaint against Mr. Johnson, who was her supervisor, as she was fearful of losing her job or other retaliation by Mr. Johnson.

27. Ms. Dawson's work environment was severely altered by Mr. Dawson's daily harassment of her.

28. Ms. Dawson purposefully went out of her way to avoid having to see Mr. Johnson, because nearly every time she passed by him or saw him while at work, he harassed her.

29. Ms. Dawson avoided hallways, break rooms, and other locations where she knew Mr. Johnson may be, and would stay in her office to keep from having to see him.

30. Ms. Dawson also learned that Mr. Johnson was the cousin of a Human Resources Director working for the Housing Authority, Mona Brown, which further hindered her ability to report the behavior.

31. Ms. Dawson learned of other women in the office being sexually harassed by Mr. Johnson and made a formal complaint in June 2016.

32. During the investigation of Mr. Johnson's behavior, it was learned that several people from several different departments had complained of or were aware of Mr. Johnson's constant inappropriate sexual commentary at multiple Housing Authority sites.

33. The Defendant Housing Authority knew of Mr. Johnson's unlawful behavior yet continued to employ him, without discipline.

34. Ms. Dawson timely filed with the EEOC, which issued a Dismissal and Notice of Rights letter.

35. Wade Johnson was, at all times relevant to the instant action, an employee of the Housing Authority of Baltimore City, acting under color of State and local law.

36. Wade Johnson knew or should have known that his sexual advances were unwelcome.

37. At all times relevant hereto, the Housing Authority of Baltimore City knew or should have known of the harassment and abuse taking place in their workplace. Ample notice was provided by Mr. Johnson's previous history of workplace sexual harassment; Mr. Johnson was fired from a previous job in the public schools for sexual harassment and had pending sexual harassment cases at the Health Department.

38. The Housing Authority failed to make adequate inquiries into Mr. Johnson's prior employment and failed to enact effective policies to keep him from serially harassing multiple people at multiple locations while under their employ.

39. Mr. Johnson was well-known for engaging in inappropriate conversations in the workplace and this behavior may have contributed to the decision to transfer him from different job sites and locations.

40. The abuses outlined herein are not limited Ms. Dawson; she was present for the sexual harassment by Mr. Johnson of other co-workers.

41. The Plaintiff has suffered severe mental pain, suffering and anguish as a result of all of these abuses. This mental pain manifests itself as evidenced by physical symptoms such as loss of sleep, nervousness, and panic attacks. The Plaintiff has experienced depression and anxiety related to the harassment and abuse by Mr. Johnson.

42. Plaintiff has suffered from a hostile work environment created by the defendants. The Plaintiff was subject to a hostile environment repeatedly through lewd and lascivious requests and comments from her supervisor both openly and in close physical proximity. Plaintiff feared being in the presence of her harasser and felt intimidated by him.

43. Defendants have subjected Ms. Dawson to discrimination on the basis of sex, including severe, pervasive, and unwelcome sexual harassment, on multiple occasions. Such conduct has included, but is not limited to, making unwelcome sexual comments and unwelcome sexual advances.

44. The discriminatory incidents described herein occurred while Wade Johnson was exercising his authority as a supervisory employee of the Housing Authority.

45. Defendant Housing Authority is liable for the actions of Wade Johnson. The Housing Authority hired Wade Johnson, knew or should have known of his history of workplace sexual harassment, knew or should have known of his discriminatory conduct, had the authority to take preventive and corrective action, and failed to take reasonable preventive or corrective measures.

46. Defendants' conduct described above constitutes a pattern or practice of resistance to the full enjoyment of the rights granted by the Civil Rights Act, 42 U.S.C. §§ 2000, et seq. which denial raises an issue of general public importance.

47. Defendants' conduct was intentional, willful, and taken in reckless disregard of the rights of others.

48. All conditions precedent to filing suit have been met.

## CLAIMS FOR RELIEF

### COUNT I – CIVIL RIGHTS ACT
### HOSTILE ENVIRONMENT SEXUAL HARASSMENT

49. Plaintiff adopts and incorporates by reference each and every allegation contained elsewhere herein verbatim with the same effect as if herein fully set forth.

50. The Plaintiff is a woman and, thus, a member of a protected class.

51. Plaintiff was employed by the Housing Authority at all times relevant to the instant action and is still so employed.

52. Plaintiff was repeatedly subjected to unwelcome and offensive comments, suggestions, and invitations by Wade Johnson.

53. Wade Johnson's harassing behavior was based on Plaintiff's sex and the inappropriate conduct was unwarranted and unwanted by Plaintiff.

54. The harassment occurred with a high frequency involving daily or near-daily occurrences, demands, and statements.

55. The harassment often rises to the level of being physically threatening or humiliating, with Mr. Johnson whispering lewd comments directly into Plaintiff's ear, making lewd statements and inappropriate suggestions out loud where other coworkers can hear him.

56. Mr. Johnson acted with ill-will and improper motive, furthering his prurient self-interest in subjecting Ms. Dawson to his sexual harassment.

57. The harassment was sufficiently pervasive and severe as to alter the conditions of Plaintiff's employment and to create a hostile, intimidating, and/or abusive work environment and has the effect of unreasonably interfering with Plaintiff's employment.

58. Defendant Housing Authority allowed Mr. Johnson to sexually harass Plaintiff and/or failed to take immediate and appropriate corrective action when notified about Mr.

Johnsons' sexually harassing behavior and/or hired Mr. Johnson knowing his history of workplace sexual harassment.

59. Defendants aforementioned actions constitute discrimination, on the basis of Plaintiff's sex, with respect to the terms, conditions, or privileges of Plaintiff's employment.

60. As a result of the defendants' actions, the Plaintiff suffered and continues to suffer severe mental anguish as well as physical pain and suffering.

61. Plaintiff is entitled to compensatory and punitive damages and attorneys' fees and costs.

WHEREFORE, the Plaintiff demands ONE MILLION DOLLARS ($1,000,000.00) in compensatory damages, punitive damages in an amount to be determined by a jury, costs and attorneys' fees, and such other relief as this Honorable Court deems appropriate.

## COUNT II – CIVIL RIGHTS ACT
## *QUID PRO QUO* SEXUAL HARASSMENT

62. Plaintiff adopts and incorporates by reference each and every allegation contained elsewhere herein verbatim with the same effect as if herein fully set forth.

63. Sex or sexual favors were demanded of the female Plaintiff by the supervisor in control of her employment. These demands were unwelcome. Similar demands were not made of male residents.

64. Plaintiff was concerned that she would lose her job if she reported or resisted the actions of Wade Johnson.

65. Mr. Johnson acted with ill-will and improper motive, furthering his prurient self-interest in subjecting Ms. Dawson to his sexual harassment and quid pro quo demands.

66. As a result of the defendants' actions, the Plaintiff suffered and continues to suffer severe mental anguish as well as physical pain and suffering.

67. Plaintiff is entitled to compensatory and punitive damages and attorneys' fees and costs.

WHEREFORE, the Plaintiff demands ONE MILLION DOLLARS ($1,000,000.00) in compensatory damages, punitive damages in an amount to be determined by a jury, costs and attorneys' fees, and such other relief as this Honorable Court deems appropriate.

## COUNT III – CIVIL RIGHTS ACT DUE PROCESS CLAIM

68. Plaintiff adopts and incorporates by reference each and every allegation contained elsewhere herein verbatim with the same effect as if herein fully set forth.

69. The Defendants were, at all relevant times, acting "under color of law," pursuant to Baltimore City's charter, codes, ordinances and regulations, the laws of the State of Maryland, and the Constitution of the United States.

70. The Plaintiff was deprived of her Constitutional rights as well as her rights as described above under the Civil Rights Act, a federal statute.

71. With respect to the United States Constitution, the Plaintiff was denied the right to due process of law insofar as her employer, a government agency, hired and continued to employ a known sexual harasser to act as her supervisor and as an agent of the government.

72. The Plaintiff has a liberty interest in the right to be secure in her person in the workplace. This interest was violated when Mr. Johnson physically touched the Plaintiff and/or approached the Plaintiff to make lewd comments in her ear, threatening her physical safety and security, and creating a hostile environment through continued and excessive sexual harassment.

73. There are no adequate procedural safeguards in place to prevent this abuse.

WHEREFORE, the Plaintiff demands ONE MILLION DOLLARS ($1,000,000.00) in compensatory damages, punitive damages in an amount to be determined by a jury, costs and attorneys' fees, and such other relief as this Honorable Court deems appropriate.

## COUNT IV – CIVIL RIGHTS ACT EQUAL PROTECTION CLAIM

74. Plaintiff adopts and incorporates by reference each and every allegation contained elsewhere herein verbatim with the same effect as if herein fully set forth.

The female Plaintiff was treated differently than her similarly-situated male counterparts, based solely on her sex.

75. The Plaintiff was singled out for harassment by the defendants. Similarly situated males suffer no similar harassment.

76. There is not a rational basis, legitimate state purpose, or compelling governmental interest in the harassment and discrimination at issue.

77. The Plaintiff was being intentionally singled out because of her sex. As such, she is a member of a suspect classification and the harassment must be viewed with strict scrutiny.

78. The harassment at issue interferes with the Plaintiff's fundamental rights to physical security, to be secure in her workplace and to privacy.

WHEREFORE, the Plaintiff demands ONE MILLION DOLLARS ($1,000,000.00) in compensatory damages, punitive damages in an amount to be determined by a jury, costs and attorneys' fees, and such other relief as this Honorable Court deems appropriate.

**JURY TRIAL DEMAND**

The Plaintiff demands trial by jury.

                Respectfully submitted,

                **HANSEL LAW, PC**

                */s/ Cary J. Hansel, III*
                Cary J. Hansel, III, Bar No. 465242
                2514 N. Charles Street
                Baltimore, MD 21218
                Phone: 301-461-1040
                Facsimile: 443-451-8606
                cary@hansellaw.com

                **HIRSCH & COSCA, PC**

                */s/Annie B. Hirsch*
                Annie B. Hirsch, Bar No. 1003381
                8401 Colesville Rd, Ste 630
                Silver Spring, MD 20910
                Phone: (301) 761-1697
                Facsimile: (410) 982-6597
                abh@hirschandcosca.com

                *Attorneys for Plaintiff*