## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| **LATANYA DAWSON**[1] | * | |
| **Plaintiff,** | * | |
| v. | | **Civil No. JKB-18-1442** |
| | * | |
| **HOUSING AUTHORITY OF BALTIMORE** | * | |
| **CITY,** *et al.,* | | |
| | * | |
| **Defendants.** | | |
| | * | |

\*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*

## MEMORANDUM

### I. Background

This action is brought by Plaintiff Latanya Dawson, an employee of Defendant Housing

Authority of Baltimore City ("HABC"). Dawson alleges that she experienced sexual abuse and

harassment perpetrated by her former supervisor at HABC, Defendant Wade Johnson. Dawson

alleges this abuse and harassment created a hostile work environment and constituted *quid pro*

*quo* sexual harassment in violation of Title VII of the Civil Rights Act of 1964 and additionally

violated the Due Process and Equal Protection Clauses of the Constitution. Compl., ECF No. 1.

HABC filed a motion to dismiss Dawson's complaint or, in the alternative, for summary

judgment. ECF No. 5. Johnson filed a motion to dismiss. ECF No. 7. The motions have been

briefed, ECF Nos. 11, 12, 14, and 15, and no hearing is necessary, *see* Loc. R. 105.6 (D. Md.

2018). For the following reasons, Defendants' motions, ECF Nos. 5 and 7, will be granted in

part and denied in part.

---

[1] The Clerk will be directed to amend the docket to reflect the correct spelling of the Plaintiff's name.

## II. Standard of Dismissal for Failure to State a Claim

A complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Facial plausibility exists "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. An inference of a mere possibility of misconduct is not sufficient to support a plausible claim. *Id.* at 679. As the *Twombly* opinion stated, "Factual allegations must be enough to raise a right to relief above the speculative level." 550 U.S. at 555. "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' . . . Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555, 557). Although when considering a motion to dismiss a court must accept as true all factual allegations in the complaint, this principle does not apply to legal conclusions couched as factual allegations. *Twombly*, 550 U.S. at 555.

## III. Standard for Summary Judgment

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (citing predecessor to current Rule 56(a)). The burden is on the moving party to demonstrate the absence of any genuine dispute of material fact. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970). If sufficient evidence exists for a reasonable jury to render a verdict in favor of the party opposing the motion, then a genuine dispute of material fact is presented and summary judgment should be denied. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). However, the "mere

existence of a scintilla of evidence in support of the [opposing party's] position" is insufficient to defeat a motion for summary judgment. *Id.* at 252. The facts themselves, and the inferences to be drawn from the underlying facts, must be viewed in the light most favorable to the opposing party, *Scott v. Harris*, 550 U.S. 372, 378 (2007); *Iko v. Shreve*, 535 F.3d 225, 230 (4th Cir. 2008), who may not rest upon the mere allegations or denials of his pleading but instead must, by affidavit or other evidentiary showing, set out specific facts showing a genuine dispute for trial, Fed. R. Civ. P. 56(c)(1). Supporting and opposing affidavits are to be made on personal knowledge, contain such facts as would be admissible in evidence, and show affirmatively the competence of the affiant to testify to the matters stated in the affidavit. Fed. R. Civ. P. 56(c)(4).

## *IV. Allegations of the Complaint*

Dawson has been employed by HABC since 1994 as a Maintenance Clerk. Compl. ¶ 11. Dawson worked at the Gilmor Homes location, and Johnson was transferred to that location and began acting as her supervisor. *Id.* ¶ 14. Between February and June 2016, Dawson alleges that Johnson made "sexually explicit and lewd comments to [her] on a nearly daily basis." *Id.* ¶ 15. These comments included, but were not limited to, saying that her "titties are sitting up nice and high," that he wished he could be a chair for her to sit on, that he wished he "had those lips wrapped around" him, that she had "sexual bedroom eyes," that he would "love to ride that trunk," that she had a "lot of junk in her trunk," and that she had "enough cushion already in that chair." *Id.* ¶ 16. Johnson made additional comments about Dawson's clothing and about other female employees' appearances and bodies. *Id.* ¶ 19. The alleged remarks about Dawson's body were so humiliating that she isolated herself in her office away from "hallways, break rooms, and other locations where she knew Mr. Johnson would be." *Id.* ¶¶ 16, 28-29. Dawson never affirmatively welcomed or encouraged these remarks, *id.* ¶ 21, and repeatedly refused to take

Johnson's cell phone number, *id.* ¶ 22. Dawson also alleges that, in retaliation for her refusal to respond favorably to Johnson's advances, he forced her to resign a second job she held as a crossing guard and otherwise threatened the loss of her newly acquired promotion at HABC. *Id.* ¶¶ 23-25. Dawson claims she was reluctant to make a complaint against Johnson because of these threats of retaliation. *Id.* ¶ 26. She also claims she was afraid to make a complaint because Johnson's cousin was the Human Resources Director at HABC. *Id.* ¶ 30. She alleges Johnson's behavior caused her "extreme mental duress, affected her ability to work productively, affected her family life, put her in fear of losing her job, and put her in fear that he would one day increase his sexual aggressiveness and do her harm." *Id.* ¶ 4.

Dawson alleges that "several people from several different departments had complained of or were aware of Mr. Johnson's constant inappropriate sexual commentary at multiple Housing Authority sites" and that HABC was thus aware, or should have been aware, of his actions. *Id.* ¶¶ 32-33. Dawson also contends that Johnson's termination from a previous job for sexual harassment should have placed HABC on notice of his behavior. *Id.* ¶¶ 37-38. Upon learning that other women in the office were being sexually harassed by Johnson, Dawson made a formal complaint in June 2016. *Id.* ¶ 31. She alleges Johnson's harassment continued up until June 9, 2016. *Id.* ¶ 13. (Although not alleged directly in Dawson's complaint, her charge filed with the Equal Employment Opportunity Commission (referenced in her complaint in this Court) stated her HABC complaint was investigated and that Johnson's employment with HABC was terminated soon thereafter. *See* EEOC Charge 2, ECF No. 5-10.)

## V. *Counts of the Complaint*

Dawson's complaint contains four counts: Count I – Civil Rights Act: Hostile Environment Sexual Harassment; Count II – Civil Rights Act: *Quid Pro Quo* Sexual

Harassment; Count III – Civil Rights Act: Due Process Claim; and Count IV – Civil Rights Act: Equal Protection Claim. Dawson alleges that Johnson's sexually harassing conduct constituted a pattern or practice contrary to "the Civil Rights Act, 42 U.S.C. §§ 2000, *et seq.*" Based on this indirect reference to the federal employment discrimination statutes, the Court analyzes Counts I and II as statutory claims under Title VII, which prohibits such conduct by employers. Counts III and IV are clearly claims based on the federal constitution, and the Court considers them brought under 42 U.S.C. § 1983.

## *VI. Analysis*

Defendant HABC filed a motion to dismiss for failure to state a claim, arguing that it was not on notice of any harassment prior to Dawson's June 2016 complaint and that it acted promptly in response to that complaint; that the alleged comments were not sufficiently severe or pervasive to constitute sexual harassment; and that Dawson did not state a claim for *quid pro quo* harassment. HABC also contends it is entitled to summary judgment on all claims for harassment prior to June 9, 2016, because that is the date Dawson first reported her harassment. Defendant Johnson filed a separate motion to dismiss for failure to state a claim, contending he has no personal liability under Title VII, that Dawson's substantive due process claim fails because her bodily integrity was not compromised by a physical assault, that she failed to state a claim for sexual harassment under the Equal Protection Clause, and that he is entitled to qualified immunity.

Johnson is correct that he has no personal liability under Title VII. *See Lissau v. Southern Food Service, Inc.*, 159 F.3d 177, 180-81 (4th Cir. 1998) ("[S]upervisors are not liable in their individual capacities for Title VII violations . . . We interpret the inclusion of agent in Title VII's definition of employer simply to establish a limit on an employer's liability for its

employees' actions."). To the extent, therefore, that Dawson brings her Title VII claims in Counts I and II against him, they are without merit.

## A. Motions to Dismiss for Failure to State a Claim for Relief

### 1. Count I – Hostile Environment Sexual Harassment

Title VII of the Civil Rights Act bars discrimination on the basis of sex with respect to compensation, terms, conditions, or privileges of employment. 42 U.S.C. § 2000e-2(1). A plaintiff may establish a violation of Title VII by proving that sexual harassment has created a hostile work environment or by proving *quid pro quo* harassment. *See Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 65-66 (1986). Dawson advances both hostile work environment (Count I) and *quid pro quo* (Count II) theories of recovery.

To demonstrate a hostile work environment, "a plaintiff must show that there is '(1) unwelcome conduct; (2) that is based on the plaintiff's sex [and/or race]; (3) which is sufficiently severe or pervasive to alter the plaintiff's conditions of employment and to create an abusive work environment; and (4) which is imputable to the employer.'" *Okoli v. City of Baltimore*, 648 F.3d 216, 220 (4th Cir. 2011) (alteration in original) (quoting *Mosby-Grant v. City of Hagerstown*, 630 F.3d 326, 334 (4th Cir. 2010)). HABC contends Dawson has failed to meet the third and fourth elements of this standard, while Johnson contends that Dawson has failed to meet the first and third elements. (Although Johnson's contention is technically inapplicable to Count I since he has no personal liability under Title VII, it will nevertheless be considered here because the Title VII claim and the constitutional equal protection claim are analyzed under the same standard, as noted *infra*.) The second element is undisputed.

The "unwelcome conduct" element of a hostile work environment claim is "not a high hurdle." *Strothers v. City of Laurel, Md.*, 895 F.3d 317, 328 (4th Cir. 2018). Conduct is

welcome where the accuser is a willing and active participant in the conduct. *See, e.g., Conner v. Schrader-Bridgeport Int'l, Inc.*, 227 F.3d 179, 196 (4th Cir. 2000). Furthermore, "the nature of the conduct may indicate whether or not the conduct is unwelcome." *Strothers*, 895 F.3d at 329. Regarding the third element, to determine whether harassment is sufficiently severe or pervasive, courts must look to "the totality of the circumstances, including the 'frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.'" *Id.* at 220 (quoting *Faragher v. City of Boca Raton*, 524 U.S. 775, 787-88 (1998)). Whether harassment may be imputed to the employer, the fourth element, is determined by evaluating whether "the employer knew or should have known about the harassment and failed to take effective action to stop it." *Ocheltree v. Scollon Prods., Inc.*, 335 F.3d 325, 334 (4th Cir. 2003).

Under these standards, the Court concludes Dawson's complaint sufficiently states a claim of hostile work environment against HABC. In her complaint, Dawson alleges Johnson made sexually explicit, lewd, and humiliating comments to her on almost a daily basis over a period of months, and she further alleges she never responded positively to Johnson's sexually suggestive comments; moreover, she alleges she isolated herself at work to avoid having contact with Johnson and alleges his conduct caused her stress and affected her productivity. Thus, she plausibly alleges the first and third elements of the cause of action. Moreover, Dawson alleges HABC was aware of Johnson's conduct based upon employee complaints about him and his prior job history of termination for similar conduct; thus, inasmuch as Johnson was her supervisor during the time he was making these remarks, Dawson's complaint also establishes the fourth element, *i.e.*, that his alleged sexual harassment was imputable to HABC. Because the

second element—that the conduct was based upon the protected characteristic of Dawson's sex—is not in dispute, her complaint adequately alleges all necessary elements of a hostile environment claim.

HABC's contention that it was not on notice of Johnson's harassment of Dawson prior to her June 2016 complaint and that it acted promptly in response to that complaint is in the nature of an affirmative defense. "A motion under Rule 12(b)(6) is intended to test the legal adequacy of the complaint, and not to address the merits of any affirmative defenses. In the limited circumstances where the allegations of the complaint give rise to an affirmative defense, the defense may be raised under Rule 12(b)(6), but only if it clearly appears on the face of the complaint." *Richmond, F. & P. R.R. Co. v. Forst*, 4 F.3d 244, 250 (4th Cir. 1993). Since the allegations of Dawson's complaint do not give rise to HABC's asserted defense, the Court will consider HABC's argument in this regard later in this opinion when addressing HABC's request for summary judgment. *Id.* ("Because neither of the asserted defenses appears on the face of the complaint, it is inappropriate to address them in the current posture of the case. These defenses are more properly reserved for consideration on a motion for summary judgment.").

HABC asserts Dawson's failure to plead she felt compelled to resign is fatal to her case, but that assertion misstates the law. HABC's Mot. Supp. Mem. 13. Only in a constructive discharge case must an employee demonstrate that a reasonable person would feel compelled to resign. *See, e.g., Carter v. Ball*, 33 F.3d 450, 459 (4th Cir. 1994). The question here is whether Johnson's alleged conduct created an abusive work environment. The Court holds that Dawson's allegations easily meet this burden.

## 2. *Count II – Quid Pro Quo Sexual Harassment*

Dawson also alleges *quid pro quo* sexual harassment. To demonstrate *quid pro quo* harassment, a plaintiff must show

> 1.) The employee belongs to a protected group.
>
> 2.) The employee was subject to unwelcome sexual harassment.
>
> 3.) The harassment complained of was based upon sex.
>
> 4.) The employee's reaction to the harassment affected *tangible aspects* of the employee's compensation, terms, conditions, or privileges of employment. The acceptance or rejection of the harassment must be an express or implied condition to the receipt of a job benefit or cause of a tangible job detriment to create liability. Further, as in typical disparate treatment cases, the employee must prove that she was deprived of a job benefit which she was otherwise qualified to receive because of the employer's use of a prohibited criterion in making the employment decision.
>
> 5.) The employer, as defined by Title VII, 42 U.S.C. § 2000e(b), knew or should have known of the harassment and took no effective remedial action.

*Brown v. Perry*, 184 F.3d 388, 393 (4th Cir. 1999) (emphasis added). Only the second, fourth, and fifth elements are in dispute here. For the same reasons mentioned above, Dawson has pled allegations sufficient to meet the second and fifth elements.

As to the fourth element, Dawson alleges Johnson threatened she would lose her promotion because she refused to flirt back or otherwise positively respond to his advances. Compl. ¶ 25. She also alleges he threatened to fire her if she did not quit her second job as a crossing guard because she refused his advances. *Id.* ¶¶ 23-24. But to establish a claim for *quid pro quo* harassment, a plaintiff must show an actual "significant change in employment status" as a result of the plaintiff's reaction to the harassment. *Okoli*, 648 F.3d at 222. Dawson alleges only that a significant change in employment status at HABC was threatened. Such threats are the province of a hostile work environment claim, not a *quid pro quo* claim. *See, e.g.,*

*Burlington Industries, Inc. v. Ellerth*, 524 U.S. 742, 753-54 (1988) (because claim involved "only unfulfilled threats, it should be categorized as a hostile work environment claim"). Dawson also alleges that Johnson's harassment forced her to quit her second job, but does not cite—and the Court is unaware of—any authority stating that a *quid pro quo* claim can be established by a change in employment status at another workplace. Therefore, her *quid pro quo* claim must be dismissed.

### 3. *Count III – Due Process*

Dawson alleges she was denied due process by HABC's continued employment of Johnson when he was sexually harassing her. This claim fails. Under Supreme Court precedent, Dawson's claim of denial of substantive due process is not permissible when a more explicit textual source of constitutional protection exists. *Albright v. Oliver*, 510 U.S. 266, 273 (1994). Consequently, when such constitutional protection exists, then that provision, not the more generalized notion of substantive due process, is the proper guide for analyzing a claim of denial of substantive due process. *Id. See also Hawkins v. Leggett*, 955 F. Supp. 2d 474, 495 (D. Md. 2013) (plaintiff cannot "piggyback" substantive due process claim onto equal protection claim), *aff'd*, 558 F. App'x 327 (4th Cir. 2014) (unpublished). Dawson's claim of a governmental actor sexually harassing her may be evaluated under the Equal Protection Clause of the Fourteenth Amendment. Moreover, the Supreme Court has also concluded, "Neither the text nor the history of the Due Process Clause supports [a plaintiff's] claim that the governmental employer's duty to provide its employees with a safe working environment is a substantive component of the Due Process Clause." *Collins v. Harker Heights*, 503 U.S. 115, 126 (1992). The Constitution's "Due Process Clause does not constitute a catch-all provision that provides a remedy whenever a state actor causes harm." *Evans v. Chalmers*, 703 F.3d 636, 646 n.2 (4th Cir. 2012). Therefore,

Dawson's substantive due process claim based on sexual harassment is without merit, and Count III will be dismissed.

### 4. Count IV – Equal Protection

The Equal Protection Clause confers a "federal constitutional right to be free from gender discrimination that is not substantially related to important governmental objectives." *Beardsley v. Webb*, 30 F.3d 524, 529 (4th Cir. 1994). Therefore, "intentional sexual harassment of employees by persons acting under color of state law violates the Fourteenth Amendment and is actionable under § 1983." *Id.* Because an employer cannot be held liable under 42 U.S.C. § 1983 on a theory of *respondeat superior*, HABC, as a municipal agency,[2] can be held liable under Count IV only if its "'policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the [plaintiff's] injury.'" *Santos v. Frederick Cty. Bd. of Comm'rs*, 725 F.3d 451, 469-70 (4th Cir. 2013) (quoting *Monell v. New York City Dep't of Social Servs.*, 436 U.S. 658, 694 (1978)) (alteration in original). "Official municipal policy includes the decisions of a government's lawmakers, the acts of its policymaking officials, and practices so persistent and widespread as to practically have the force of law." *Connick v. Thompson*, 563 U.S. 51, 61 (2011). Dawson has minimally alleged a persistent and widespread practice within HABC of permitting Johnson, and others, to sexually harass female employees.

Otherwise, the same standards for sexual harassment developed under Title VII apply to sexual harassment under the Equal Protection Clause. *See Beardsley*, 30 F.3d at 529. Therefore, the reasons for denying HABC's motion to dismiss Dawson's hostile work environment claim in Count I under Title VII apply equally to HABC's motion to dismiss her similar claim in

---

[2] HABC states in its supporting memorandum that it "is a local government created by statute and independently registered with the State Department of Assessment and Taxation. Md. Code Ann., Hsg. & Comm. Dev. § 12-201. HABC is not a division of Federal, State, or City Government." HABC's Mot. Supp. Mem. 3 n.1.

Count IV under the Equal Protection Clause as well as to Johnson's motion to dismiss Count IV. Dawson has thus plausibly alleged her constitutional right to equal protection was violated by HABC and Johnson.

As noted before, HABC's argument that it has a viable affirmative defense to Dawson's hostile environment claim is not properly considered in conjunction with HABC's challenge to the sufficiency of Dawson's statement of her claim. Similarly, to the extent Johnson contends that, in fact, his conduct was welcomed by Dawson, he, too, cannot succeed in this argument at this stage of the case because it is premised upon the evidentiary sufficiency of Dawson's claim rather than the plausibility of her allegations. The latter, but not the former, is at issue in his motion to dismiss for failure to state a claim for relief.

Beyond that, however, Johnson claims he is entitled to qualified immunity. To overcome Johnson's claim of qualified immunity, Dawson must show 1) that the alleged conduct is a violation of a statutory or constitutional right, and 2) that the right was clearly established at the time of the challenged conduct. *Cannon v. Vill. of Bald Head Island, N.C.*, 891 F.3d 489, 497 (4th Cir. 2018). The Court has already held that Dawson's allegations suffice to claim a violation of her constitutional right to equal protection. In addition, the Court has no doubt that her right to be free of the alleged sexual harassment was clearly established at the time of the challenged conduct. Dawson has alleged that Johnson made "sexually explicit and lewd comments to [her] on nearly a daily basis" in the year 2016. Compl. ¶ 15. The *Beardsley* case, decided in 1994, is clear that sexual harassment in a governmental workplace constitutes a violation of an employee's right to equal protection. Johnson was therefore on notice that his alleged behavior violated the Constitution, and his motion to dismiss Count IV on the grounds of qualified immunity will be denied.

### 5. *Punitive Damages*

HABC also argues that Dawson's complaint fails to allege an appropriate basis for the imposition of punitive damages. HABC is partly correct. Punitive damages can be awarded under Title VII for cases of "unlawful intentional discrimination (not an employment practice that is unlawful because of its disparate impact)." 42 U.S.C. § 1981a(a)(1). That grant of authority to recover punitive damages is further qualified by another subsection: "A complaining party may recover punitive damages under this section against a respondent (*other than a government, government agency or political subdivision*) if the complaining party demonstrates that the respondent engaged in a discriminatory practice or discriminatory practices with malice or with reckless indifference to the federally protected rights of an aggrieved individual." 42 U.S.C. § 1981a(b)(1) (emphasis added). Thus, by the statute's own terms, Dawson cannot recover punitive damages on her Title VII claim against the governmental defendant HABC (who is the only defendant against whom that claim may be asserted). Even so, the Supreme Court has approved the award of punitive damages in an action under 42 U.S.C. § 1983 "when the defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others." *Smith v. Wade*, 461 U.S. 30, 56 (1983). And such an award may be assessed against a local governmental entity. *Memphis Cmty. Sch. Dist. v. Stachura*, 477 U.S. 299, 305-06 (1986); *Piver v. Pender Cty. Bd. of Educ.*, 835 F.2d 1076, 1082 (4th Cir. 1987).[3] Dawson's allegations permit an inference that Johnson's persistent, near-daily sexual harassment was motivated, at the least, by reckless or callous indifference to Dawson's federally protected right of equal protection.

---

[3] HABC asserts it is shielded from punitive damages by Maryland's Local Government Tort Claims Act, HABC's Mot. Dismiss Supp. Mem. 20, but cites no authority for its implicit proposition that a federal constitutional claim under 42 U.S.C. § 1983 is limited by that statute.

And Dawson has plausibly pled that Johnson's conduct was attributable to HABC. Consequently, the potential for punitive damages remains viable for Count IV.

### B. HABC's Alternative Motion for Summary Judgment

HABC intertwines its argument for summary judgment with its argument for dismissal for failure to state a claim. As the Court understands it, HABC asserts an entitlement to summary judgment based on an affirmative defense that relieves it of liability for Johnson's conduct prior to Dawson's filing of a complaint to an HABC supervisor in June 2016, citing the cases of *Faragher v. City of Boca Raton*, 524 U.S. 775 (1998), and *Burlington Industries, Inc. v. Ellerth*, 524 U.S. 742 (1988). HABC's Mot. Supp. Mem. 15-17. To escape liability under the *Faragher-Ellerth* defense, an employer must show it exercised reasonable care to prevent and to promptly correct any sexually harassing behavior, and it must further show "'the plaintiff employee unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise.'" *E.E.O.C. v. R&R Ventures*, 244 F.3d 334, 341 (4th Cir. 2001).

HABC refers the Court to certain evidence in support of its motion for summary judgment. HABC's executive director had, less than a year before Dawson's June 2016 complaint, reminded HABC's employees of its long-standing policy against sexual harassment. The policy set forth a procedure for initiating a complaint and indicated that a victim, a member of supervisory personnel, "or any other person having knowledge of suspected sexual harassment should report the incident either verbally or in writing to the HABC Fair Housing and Equal Opportunity Office (FHEEO)." HABC's Mot. Ex. 1A at 9 (the Court uses the pagination numbers provided by CM/ECF), Ex. 1B, ECF Nos. 5-3, 5-4. HABC's promulgating such a policy and periodically bringing it to its employees' attention are indicative it exercised

14

reasonable care to prevent sexually harassing behavior. The question remains whether HABC promptly corrected Johnson's sexually harassing behavior, and the answer depends upon whether HABC had been made aware of his behavior prior to Dawson's complaint since the evidence is clear that HABC promptly responded to her complaint and terminated Johnson roughly one month after Dawson complained. *See id.* Ex. 2, Ex. 2B, Ex. 2C, Ex. 2D, ECF Nos. 5-5, 5-7, 5-8, 5-9. That HABC promptly terminated Johnson's employment after an investigation triggered by Dawson's complaint does not shield it from liability, however, if it had actual knowledge of Johnson's harassment prior to her complaint. *See Faragher* 524 U.S. at 789; *Mosby-Grant v. City of Hagerstown*, 630 F.3d 326, 337 (4th Cir. 2010).

HABC's investigation of Dawson's complaint yielded statements from various subordinates of Johnson indicating he frequently made sexually suggestive, if not explicit, comments to them or within their hearing. *Id.* Ex. 2B. Given HABC's policy that all employees should report such improper conduct, why HABC was unaware of Johnson's history before Dawson's complaint is unclear. One of the HABC investigator's notes provided information from an employee named Tongo Best, who indicated that Johnson's inappropriate "behavior occurred so often, it became normal." *Id.* at 12. Ms. Best also indicated, "[M]anagement knew how he was, but looked the other way," "Even if they told, no-one would believe them," "When employees complained, no-one took them serious. Complained to Jenel Warner, Carla Walton, etc.," and "People are afraid to speak up – they went to HR and they did nothing about it." *Id.*

Furthermore, Dawson supplements her opposition to HABC's motion with affidavits from coworkers stating that HABC was aware of Johnson's harassing behavior. *See* Pl.'s Opp'n, Ex. 1, ECF No. 11-1 (behavior was reported to HABC in 2015), Ex. 2, ECF No. 11-2 (Johnson was "constantly" making sexual comments towards female workers). Additionally, Dawson

provides her own affidavit in which she states she "had both observed and had personal experience that HABC commonly dealt with incidences such as sexual harassment, employees fighting, and employees stealing by sweeping things under the rug rather than enforcing existing policies"; also, Dawson states, "I had a previous bad experience with reporting the behavior of one Edward Stewart, in relation to which the supervisor investigating the claim, one Barbara Snow, called me a liar rather than hold Mr. Stewart accountable for his behavior." *Id.* Ex. 3, ECF No. 11-3. Because a genuine dispute of material fact exists as to whether and to what extent HABC had actual knowledge of Johnson's harassment prior to Dawson's complaint, summary judgment is improper at this stage on Count I and Count IV.

## VII. Conclusion

HABC's motion to dismiss will be granted as to Counts II and III and will be denied as to Counts I and IV. HABC's motion to dismiss will also be granted in part and denied in part as to punitive damages; Dawson's request for punitive damages on Count I will not be permitted to go forward. HABC's alternative motion for summary judgment on Counts I and IV will be denied. (Because the Court is granting dismissal of Count II, HABC's request for summary judgment on Count II is moot.) Johnson's motion to dismiss Counts I and II as against him and to dismiss the entirety of Count III will be granted. His motion to dismiss as to Count IV will be denied. A separate Order shall issue.

DATED this ___9___ day of January, 2019.

BY THE COURT:

James K. Bredar
Chief Judge

16